IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>ALL TETHER TOKENS HELD IN CRYPTOCURRENCY WALLET ADDRESSES INDENTIFIED BY:<br>0x532961b23a28a9E5a8b1769BDb3E8906fc7c7A01<br>and<br>0xF58Ba47A2F8d666073AE4c9D85E6A7224C58B575,<br><br>　　　　Defendants. | Civil Action No.   2:25cv427 |

## VERIFIED COMPLAINT FOR FORFEITURE

AND NOW comes the United States of America, by and through its counsel, Troy Rivetti, Acting United States Attorney for the Western District of Pennsylvania, and Jill L. Locnikar, Assistant United States Attorney for the Western District, and respectfully represents as follows:

1.　Plaintiff, the United States of America, brings this civil action *in rem* for forfeiture to the United States of all Tether tokens held in cryptocurrency wallet addresses identified by 0x532961b23a28a9E5a8b1769BDb3E8906fc7c7A01 (Address 1) and 0xF58Ba47A2F8d666073AE4c9D85E6A7224C58B575 (Address 2) (the "Defendant Property"), pursuant to 18 U.S.C. " 981(a)(1)(A), 18 U.S.C. ' 981(a)(1)(C), and 982(a)(1).

2.　Jurisdiction is predicated upon 28 U.S.C. ' 1345 and ' 1355(a).  Venue is proper under 28 U.S.C. ' 1395 and § 1355(b).

3.　From on or about August 2023 through December 2024, Federal Bureau of

Investigation (FBI) investigated actors responsible for perpetrating a pig butchering scam[1] against victims that resulted in financial loss.

4. FBI executed a warrant for the Defendant Property that was stolen by an unknown perpetrator from a victim known as P.R. located in Pennsylvania and two additional victims of the same scheme known as W.F. (a resident of Illinois) and M.L. (a resident of Washington).

5. The subject, known as Rossi Newlon ("Newlon"), made contact with P.R. through the social media platform LINKEDIN. In or around August 2023, Newlon began to message P.R. on WhatsApp, an encrypted messaging application. (P.R. provided the FBI with the WhatsApp chats as part of the investigation.)

6. Newlon messaged P.R. multiple times to gain P.R.'s confidence, articulate strategies for investing in cryptocurrency, and provide initial steps to begin crypto investment trading.

7. In Newlon's efforts to avoid P.R.'s funds from being frozen, Newlon sent a message to P.R., with instructions not to disclose to his bank, with the details of the transactions and how they were conducted.

8. During an exchange of messages, Newlon recommended to P.R. to use "coinbase wallet" as the preferred crypto wallet. In addition, Newlon provided P.R. with the domain – https://ctyptotopools.com – along with instructions on how to send the first $5,000.00 payment.

9. FBI researched the domain through a dedicated FBI database which revealed complaints surrounding fraudulent activity similar to P.R.'s circumstance. Based on the knowledge and experience of law enforcement, perpetrators, similar to Newlon, provide a

---

[1] A pig butchering scam is a term or metaphor used to describe an investment fraud scheme whereby the victim is gradually convinced, by the perpetrator, to make investments in cryptocurrency and then the perpetrator steals the victim's investment money.

domain to victims to establish the legitimacy of the cryptocurrency investment. In addition, the domain can be used as a mechanism to defraud the victim into believing their investment funds are growing when, in reality, the perpetrator is controlling and operating the domain.

10. At the direction of Newlon, P.R. sent the following amounts to crypto trading platforms: $5,000.00 (on or around September 3, 2023); $10,000.00 (on or around August 16, 2024); $65,000.00 (on or around August 16, 2024); $70,000.00 (on or around September 26, 2024); $70,000.00 (on or around October 23, 2023); $51,000.00 (on or around October 29, 2024); $84,000.00 (on or around November 8, 2024); and $318,154.00 (on or around December 6, 2024).

11. At one point, when P.R. attempted to withdraw a portion of his funds from the fraudulent investment platform and transfer it into his personally controlled wallet, he was instructed to pay a withdrawal fee in the amount of $85,000.00 to initiate this transaction.

12. FBI identified approximately $303,000.00 that was sent from P.R.'s PNC Bank account to an account at Ibanera (a digital banking and payments platform) and then into P.R.'s private wallet (a secure self-custody crypto wallet). P.R. sent approximately $303,000.00 to a cryptocurrency address that Newlon provided.

13. P.R. provided FBI with images of his communications with Newlon that shows completed transactions and the wallet addresses. FBI traced the funds across multiple cryptocurrency addresses that started with an address controlled by P.R. to an address controlled by the perpetrator. Based on law enforcement knowledge and experience, the movement of the funds within approximately thirteen hours and the details P.R. provided as to the pig butchering scam are indicative of money laundering and establish probable cause that the Defendant Property represents proceeds of money laundering and wire fraud.

14. Coinbase[2] provided account information to the FBI that established that W.F. and M.L. were holders of Coinbase accounts who transferred substantial amounts of cryptocurrency to Address 1. W.F. and M.L. sent approximately $930,000.00 to what they thought was a cryptocurrency trading platform. Based on FBI's investigation, the similarities of the schemes and the use of the same cryptocurrency wallet address demonstrate that P.R., W.F., and M.L. were victims of the same organized crime group.

15. Address 1 received approximately 704,635 USDT[3]. P.R. sent approximately 100,000 USDT; W.F. sent approximately 91,012 USDT; and M.L. sent approximately 169,820 USDT.

16. On or around January 8, 2025, Address 1 sent approximately 338,442 USDT to Address 2.

17. FBI recognizes that Address 2 has had negligible transactional activity since receiving the funds from Address 1. As of January 13, 2025, Address 2 contains approximately 338,542 USDT.

18. On January 18, 2025, Tether froze the wallets at Address 1 and Address 2. The closing price of one token was $0.9991. In the cryptocurrency wallets at Address 1 and Address 2, FBI seized approximately 538,492.0000 USDT.

19. Based on the foregoing, the Defendant Property represents proceeds generated from money laundering in violation of 18 U.S.C. ' 1956, and, therefore, is forfeitable to the United States pursuant to 18 U.S.C. " 981(a)(1)(A) and 982(a)(1). In addition, the Defendant

---

[2] Coinbase is a publicly traded American company that operates as a cryptocurrency exchange.
[3] Tether is a cryptocurrency stablecoin launched by Tether Limited, Inc. and is identified by its currency code USDT.

Property is subject to forfeiture pursuant to 18 U.S.C. ' 981(a)(1)(C) because they are proceeds of wire fraud in violation of 18 U.S.C. ' 1343.

WHEREFORE, the United States of America respectfully requests that Judgment of Forfeiture be entered in favor of the United States for the Defendant Property; and that the United States be granted such relief as this Honorable Court may deem just and proper, together with the costs and disbursements of this Action.

Respectfully submitted,

TROY RIVETTI
Acting United States Attorney

*/s/ Jill L. Locnikar*
JILL L. LOCNIKAR
Assistant U.S. Attorney
Joseph F. Weis, Jr. U.S. Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
(412)894-7429
(412)644-6995 (fax)
jill.locnikar@usdoj.gov
PA ID No. 85892 (AFF)

## VERIFICATION

I am a Special Agent of the Federal Bureau of Investigation, Department of Justice, and the case agent assigned to this case.

I have read the contents of the foregoing complaint for forfeiture and the statements contained therein are true and correct to the best of my knowledge and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on this 27 day of MARCH, 2025.

James Maskell, SA
Federal Bureau of Investigation